IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TERRI BOYD, | ) CIVIL ACTION NO. 9:13-3189-DCN-BM |
|             Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
|             Defendant. | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Supplemental Security Income (SSI)[1] on October 26, 2010, alleging disability beginning November 1, 2005 due to arthritic knees, back pain, sleep apnea, a thyroid condition, and panic attacks. (R.pp. 64, 135-143). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 8, 2012. (R.pp. 43-82). The ALJ thereafter denied Plaintiff's claim in a

---

[1]Unlike Disability Insurance Benefits (DIB), SSI does not require the showing of disability during a set insured period of previous work activity. Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008). However, "[a]n applicant who cannot establish that she was disabled during [an] insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005); see also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



decision issued August 10, 2012. (R.pp. 9-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the



Commissioner. Laws, 368 F.2d at 642.  "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

This was the sixth application for SSI filed by the Plaintiff, all of which have been denied.  Her most recent application for SSI (prior to the current one), which also alleged disability since 2005, was denied in a decision issued June 23, 2010. (R.pp. 12, 384).  Therefore, even though Plaintiff again alleges in her current application that she has been totally disabled since 2005, the fact that Plaintiff's impairments were not of a disabling severity through June 23, 2010 has already been established for purposes of her current application.  Cf. Osgar v. Barnhardt, No. 02-2552, 20014 WL 3751471 at * 3 (D.S.C. May 29, 2004) ["The reopening of an application for benefits is left to the discretion of the Commissioner and a refusal to do so is not capable of review by the federal courts."].

A review of the record shows that Plaintiff was only thirty (30) years old when she filed her most recent application on October 26, 2010.  (R.p. 135).  Her education level is a little unclear, as she testified at the hearing before the ALJ that she had completed the ninth grade, but at other times has stated she completed the tenth grade, or even graduated from high school. (R.pp. 51-52, 415, 446).  As for past relevant work experience, Plaintiff indicated to medical providers that her occupation was "babysitter", and she testified at the ALJ hearing that she last worked from October through December 2011 babysitting a three year old from 6 a.m. to 8 p.m., four days a week.  (R.pp. 51-53).  Plaintiff also testified that she had worked as a cashier at Walmart in 2001 or 2002, and as a telemarketer in the 1990s.  (R.pp. 54-55).  However, even though her earnings record showed that



she earned over $12,000 in 2010, when asked about those earnings at the hearing, Plaintiff testified that she did not work in 2010. (R.pp. 56-57). Based on this case history, for purposes of the decision in this case the ALJ found that Plaintiff did not have any past relevant work. (R.p. 21).

In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case,[2] the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[3] of obesity, sleep apnea, hypothyroidism, degenerative joint disease involving the right knee, depression, and anxiety, she nevertheless retained the residual functional capacity (RFC) to perform a reduced range of light work[4], and was therefore not entitled to Supplement Security Income benefits. (R.pp. 14, 17, 21-22).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to assign any weight to the medical opinion of Dr. Rebecca Alsip, one of Plaintiff's treating physicians and which

---

[2]Although it has already been established for purposes of this decision that Plaintiff was not disabled through June 23, 2010, the ALJ did consider Plaintiff's complete medical history in reaching a decision as to whether Plaintiff was disabled within the meaning of the Social Security Act since October 26, 2010, the day the application was filed. (R.p. 12). SSI is not payable prior to the month following the month in which the application was filed. See Werts v. Commissioner, No. 13-914, 2014 WL 6078434 at * 1 n. 2 (N.D.N.Y. Nov. 13, 2014) (citing 20 C.F.R. § 416.335).

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

4



supported a finding of disability; by improperly rejecting the opinion of examining physician Dr. Gordon Early; and by performing an incomplete and inaccurate RFC assessment that was not supported by substantial evidence. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

In reaching a decision in this case, the ALJ found that, although Plaintiff is morbidly obese (a condition that can cause physical work related limitations), her musculoskeletal examinations have consistently been benign while x-rays of her knees show that she suffers from only mild degenerative joint disease. (R.p. 14). The ALJ also noted that Plaintiff's medical records reveal no evidence of significant lower extremity compromise, only mild arthritic changes in the right knee with no swelling and full range of motion, no radiographic evidence of left knee compromise, and that Plaintiff's gait was consistently normal. (R.p. 18). These findings are supported by the case record. See (R.pp. 284, 310-311, 317-318, 321-323, 330, 334, 341, 390-391, 396, 412, 447, 452, 464, 490, 492, 499, 511). See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]; Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical



impairment]. Additionally, the ALJ also adopted the findings of the state agency physician, who after review of Plaintiff's medical records in May 2011 opined that Plaintiff had the physical RFC to perform light work limited to frequently climbing ramps/stairs and balancing, and occasionally kneeling, crouching, and crawling, with avoidance of concentrated exposure to hazards such as machinery and heights, but with no other physical limitations. (R.pp. 20, 418-425). See Johnson v. Barnhart, 434 F.3d at 657 [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]. The ALJ specifically incorporated these limitations into the RFC in his decision. (R.p. 17). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

With respect to Plaintiff's sleep apnea, the ALJ noted that Plaintiff received effective treatment for her sleep apnea with a CPAP device, following which her primary care provider reported improved sleep and effective control of symptoms. (R.pp. 448, 508, 510-511). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [condition is not disabling if can be reasonably controlled by medication or treatment]. The ALJ further noted that the record was devoid of findings of chronic hypoxemia[5] or daytime somnolence, or evidence of disturbance in Plaintiff's cognitive function and vigilance, noting the fact that Plaintiff had been able to care for a three year old child for fourteen hours at a time, as well as other activities showing that any residuals from Plaintiff's sleep apnea were not of a disabling severity. (R.pp. 16, 19); see (R.pp. 416-417, 489, 497, 508, 510, 512). Cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating limitations where she

---

[5]Hypoxemia (also known as oxygen desaturation) is defined as an abnormally low partial pressure of oxygen in the arterial blood. http://www.normalbreathing.com/d/hypoxemia.php



engaged in a variety of activities]. Based on these medical records, the ALJ determined that, although Plaintiff's sleep apnea is a severe impairment, it could be accommodated in Plaintiff's RFC by restricting her to never climbing ropes, ladders or scaffolds and avoiding concentrated exposure to hazards such as heights and dangerous machinary. (R.p. 19). The undersigned can discern no reversible error in this finding. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

As for Plaintiff's hypothyroidism, the ALJ determined that there was no consistent evidence that her intermittent symptoms due to this condition more than minimally impacted her ability to perform basic work activity. In reaching this conclusion, the ALJ noted the generally normal findings in Plaintiff's medical records, with a one month history of symptoms of nausea in January 2012 found to be likely related to elevated TSH (thyroid stimulating hormone) levels. (R.pp. 19, 494). Notably, Plaintiff's hypothyroidism was not thereafter referenced as being a problem on follow up visits to her physician. (R.pp. 488-491). The ALJ also noted Dr. Alsip's finding on May 7, 2012 that Plaintiff's hypothyroidism was "recently" uncontrolled, thereby requiring an increase in medication. This statement from Dr. Alsip was presented at the hearing, and the ALJ found that this exhibit suggested that it was the first time Plaintiff had been seen since January 2012, when her TSH was elevated and her medications were adjusted. (R.pp. 19, 516). Cf. Abez Velez v. Sec't of HHS, No. 92-2438, 1993 WL 177139, at * 7 (1st Cir. May 27, 1993) [Proper for ALJ to draw inferences from the evidence]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing Kasey v. Sullivan, 3F.3d 75, 79 (4th Cir. 1993). There are no other records referenced by the Plaintiff as showing her hypothyroidism caused any significant limitations in her ability to function, and the ALJ's determination that there was no consistent



evidence that Plaintiff's symptoms due to her hypothyroidism more than minimally impacted her ability to perform basic work activity is supported by substantial evidence in the case record. Gross, 785 F.2d at 1166 [condition is not disabling if reasonably controlled by medication or treatment]; Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Hepp, 511 F.3d at 806 [Noting that the substantial evidence standard requires less that even a preponderance of the evidence].

As for Plaintiff's depression and anxiety, the ALJ determined that Plaintiff's mental impairment resulted in a only mild restriction in her activities of daily living and with respect to her ability to maintain concentration, persistence, or pace, and a moderate difficulty in her social functioning. (R.pp. 16-17). In making this finding, the ALJ indicated that he had given Plaintiff the benefit of the doubt in assessing her with a moderate limitation in her social functioning due to her complaints that she does not like to be around the public and that she had reported to her family practitioner that she had had a panic attack at the grocery store. Nonetheless, the ALJ noted that Plaintiff attends church regularly, socializes at the community center and has a boyfriend, and even indicated in her Function Report that she did not have a problem getting along with others. (R.pp. 16, 20, 60-61, 220-222, 446, 462). In finding only mild limitations otherwise, the ALJ noted that Plaintiff testified that she participated in a broad variety of typical daily activities, that the objective evidence did not reflect any problems with Plaintiff's reading and writing, while her mental status examinations did not indicate Plaintiff had any functional deficits, citing to Plaintiff's testimony that she reads the paper, plays computer games, and enjoys doing word search puzzles. (R.pp. 16-17, 20, 61-62). The ALJ also noted the findings of the state agency physicians, both of whom found that Plaintiff had only mild degrees of limitation due to any mental impairment. (R.pp. 20, 381, 439). Smith, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence



to support the decision of the Commissioner]. Indeed, the decision reflects that the ALJ gave Plaintiff every benefit of the doubt by assigning her a more severe level of impairment than was opined to by the state agency physicians. Although both state agency physicians opined that Plaintiff had only a mild impairment in her social functioning, the ALJ awarded her moderate social limitations, citing to Plaintiff's intermittent diagnoses and her temporary medication regimen of Wellbrutrin and Klonopin. (R.p. 20). See Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner].

      Finally, the ALJ noted that her findings with respect to Plaintiff's mental RFC were also consistent with the consultative psychological findings of Dr. Caleb Loring, who evaluated the Plaintiff on May 24, 2011, and opined that Plaintiff was capable of engaging in many activities of daily living, that she had not evidenced any significant social problems during the interview, that she did not exhibit any significant concentration or memory problems, nor did she exhibit any problems completing tasks at an adequate pace. Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. Further, because Dr. Loring did opine that, due to Plaintiff's depression and anxiety, it would be best for her to work at a job with limited public contact, the ALJ specifically incorporated this limitation into Plaintiff's RFC. (R.pp. 17, 20-21, 415-417). See also Latham v. Colvin, No. 13-1637, 2014 WL 5106102 at * 5 (S.D.Ind. Oct. 9, 2014)[Finding limitation to jobs involving only frequent contact with public accounted for moderate social functioning].

      In sum, the ALJ determined that the RFC she assigned was consistent with the medical record as whole; with the opinion of the state agency medical consultants; and that it took into account Plaintiff's testimony with respect to the extent of her anxiety and panic attacks and



residual pain by limiting her to work at the light exertional level limited to frequent climbing and balancing and occasional stooping, kneeling, crouching, and crawling, avoidance of concentrated exposure to hazards, and limited to frequent public contact. (R.p. 17). Hyser, 2012 WL 951468, at * 6 [Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]. While Plaintiff obviously believes she should have been assigned greater limitations based on her history of consistent complaints of pain, depression and anxiety, it is the job of the ALJ to evaluate the record and make findings after a review of the evidence, and there is nothing in the record cited and discussed hereinabove which would warrant this Court overturning the ALJ's decision in this case. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

## II.

Plaintiff's main argument for reversal of the decision is her contention that the ALJ failed to properly evaluate the findings and conclusions of Dr. Alsip, one of her treating physicians, in particular Dr. Alsip's statement of May 7, 2012 that was submitted at the hearing. In this statement, Dr. Alsip said that she had been Plaintiff's primary care physician since 2009, and noted



that Plaintiff is obese, has mild degenerative arthritis in her right knee, that her THS had been "recently" uncontrolled, and that Plaintiff also suffers from severe sleep apnea as well as depression.[6] Dr. Alsip opined that Plaintiff's obesity and her knee arthritis "may lead to her current limitation of performing no more than sedentary work",[7] that because of her sleep apnea Plaintiff "could" become drowsy while working and also "may" fall asleep in a seated position, and that this condition (as well as any fatigue due to uncontrolled hypothyroidism) "could" present frequent interruptions in Plaintiff's concentration while performing regular tasks at work. (R.p. 516).

In addition to complaining about the ALJ's treatment of Dr. Alsip's opinion, Plaintiff also assigns error to the ALJ's treatment of the report of Dr. Early, who saw Plaintiff for a consultative evaluation in November 2010. Dr. Early opined that a nocturnal oximetry study performed at that time showed that Plaintiff had mild to moderate sleep apnea, and that this level of sleep apnea would significantly impair Plaintiff's attentiveness during the daytime. (R.p. 372). See (R.pp. 365-371). Although Dr. Early only saw Plaintiff on this one occasion, a year and one half later he provided Plaintiff a statement in which he opined that, based on his November 2010 examination, Plaintiff suffers from significant sleep apnea which would impair her concentration during the day due to solmnolence. Dr. Early concluded this statement by opining that if Plaintiff "does not have treatment with CPAP machine then it is most probable that she would suffer interruptions to concentration sufficient to frequently interrupt tasks throughout the workday, and

---

[6] Dr. Alsip also stated that Plaintiff had "presented with lower extremity edema at times", although she noted that this was not a chronic problem.

[7] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



if she were working a sedentary job she would tend to fall asleep while seated". (R.p. 517).

The ALJ noted both of these statements in her decision, finding (with respect to Dr. Early) that the medical record as a whole did not support the degree of limitation opined to, particularly noting the fact that Plaintiff had been able to provide child care for a toddler fourteen hours a day, perform a variety of household chores, and engage in such activities as word search puzzles, all showing that Plaintiff's sleep apnea did not significantly impair her attentiveness during the daytime. (R.p. 19); see also (R.pp. 52-53, 60-61, 220, 414). Further, even Dr. Early qualified his statement by opining that Plaintiff would suffer from interruptions to concentration and may fall asleep at work "[i]f she does not have treatment with CPAP machine". (R.p. 517). The ALJ specifically noted in her decision that Plaintiff received effective treatment for her sleep apnea when using a CPAP device. (R.pp. 448, 508, 510-511).

As for Dr. Alsip, the ALJ noted her finding on May 7, 2012 that Plaintiff's TSH had only been "recently" uncontrolled, requiring an increase in her medicine. (R.pp. 19, 516). Although Dr. Alsip goes on to note in this statement that hypothyroidism can cause fatigue, it is clear that this opinion only related to when Plaintiff's hypothyroidism was uncontrolled, while with respect to Plaintiff's sleep apnea (which Dr. Alsip also conceded she had never even treated Plaintiff for) Dr. Alsip opined (consistent with the findings of Dr. Early) that Plaintiff needed a CPAP machine for this condition. (R.p. 516). That finding by both Dr. Early and Dr. Alsip does not, however, mean that Plaintiff is disabled, as the ALJ noted that Plaintiff could receive effective relief when using a CPAP. Gross, 785 F.2d at 1166 [condition is not disabling if reasonably controlled by medication or treatment]; see also Mullins v. Colvin, No. 13-1887, 2014 WL 35663279, at * 4 (W.D.Wash. July 18, 2014).

Otherwise, the ALJ notes throughout her decision Plaintiff's medical records



indicating that when Plaintiff's conditions are treated (with some records noting that Plaintiff is not herself always compliant with her treatment), she does not suffer from any disabling condition due to either her hyperthyroidism or her sleep apnea. Rather, these records (including records from Dr. Alsip and from Dr. Alsip's practice) consistently note that Plaintiff is able to exercise, and has generally been found over a longitudinal period to be alert and cooperative, with a normal mood and affect, and normal attention span and concentration. See generally, (R.pp. 311, 319, 321,325-327, 333, 341, 412). Indeed, in an office note dated May 2, 2011, Dr. Alsip herself noted that Plaintiff was oriented in all spheres, that her thought process was intact, her thought content was appropriate, she had a normal mood/affect, normal attention and concentration, and a normal memory. (R.p. 414). These findings are all consistent with the RFC found by the ALJ in the decision, and the undersigned finds no reversible error in the ALJ's consideration and evaluation of this medical evidence. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'].

       Plaintiff does correctly note that, since the ALJ found in her decision that Plaintiff could perform light work with her exertional limitations, the ALJ implicitly rejected Dr. Alsip's opinion of May 7, 2012 that Plaintiff was limited to sedentary work, and correctly argues that an ALJ should ordinarily specifically accept or reject the opinion of a treating physician. See Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]. However, the ALJ's failure to specifically state in her decision that she was rejecting Dr. Alsip's May 2013 opinion that Plaintiff could perform no more than sedentary work was not reversible error under the facts of this case.



First, Plaintiff herself acknowledges that what the ALJ is required to do is examine the relevant evidence and explain the weight given to evidence in making her findings. Plaintiff's Brief, pp. 18-19. As previously noted, the ALJ did specifically address Dr. Alsip's findings with respect to Plaintiff's hypothyroidism. She also noted Dr. Alsip's conclusion that Plaintiff exhibited no limitations in adaptive functioning secondary to depression. (R.pp. 20, 414). While, with respect to Dr. Alsip's opinion that Plaintiff could perform the exertional requirements of no more than sedentary work, the ALJ did not explicitly reject this opinion, she did discuss Plaintiff's physical limitations and the evidence relating thereto, which included the records from Dr. Alsip and from her practice, in finding that Plaintiff had the physical RFC to perform light work limited to frequently climbing ramps/stairs and balancing, and occasionally kneeling, crouching, and crawling, with avoidance of concentrated exposure to hazards such as machinery and heights; (R.pp. 14, 18); findings which the undersigned has previously found are supported by substantial evidence in the record. See generally, (R.pp. 284, 310-311, 317-318, 321-323, 330, 334, 341, 390-391, 396, 412, 447, 452, 464, 490, 492, 499, 511). See also Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Carlson, 999 F.2d at 181 ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"].

Hence, while the ALJ did not explicitly state that she was rejecting Dr. Alsip's opinion from May 7, 2012 that Plaintiff could only do sedentary work, since she obviously did so based on her review of the entire record (including the records from Dr. Alsip and her clinic), any



inartfulness in the ALJ's conclusion in this regard is not a basis on which to overturn the decision under the facts of this case. Mickles, 29 F.3d at 921 [finding the ALJ's error harmless when the ALJ would have reached the same result notwithstanding an error in his analysis]; Nelson v. Commissioner, 195 Fed.Appx. 462, 472 (6th Cir. Aug. 28, 2006) [Finding no error where ALJ implicitly rejected treating physicians's opinion where ALJ discussed findings of several medical providers who had come to a different conclusion]; see also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case"], quoting Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ["a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."]; Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005); Garner v. Astrue, CIV. SKG–10–1930, 2011 WL 3758311 (D.Md. Aug.23, 2011) ["The ALJ did not discuss this medical evidence which he arguably should have done. However, this is harmless error, if error at all, since the evidence is consistent with the other evidence in the record."]; Davis v. Astrue, No. 07–231, 2008 WL 540899, at *3 (D.S.C. Feb. 22, 2008) [recognizing harmless error analysis]; Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"].

      Plaintiff's claim that the ALJ erred by adopting the findings of the state agency physicians with respect to Plaintiff's RFC capacity is also without merit. See Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining



physicians]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."].

Therefore, the undersigned can find no reversible error in the ALJ's treatment of the evidence from Drs. Alsip and Early. Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; see also Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

### III.

Finally, to the extent Plaintiff's complaint is that the ALJ did not in her decision discuss every medical record submitted, this is not a requirement. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]. Rather, what is required is that the ALJ review the medical records and set forth a rationale for her decision that is supported by substantial evidence in the case record. Carlson, 999 F.2d at 181 [". . .What we require is that the ALJ sufficiently articulate her assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the



16

important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]. An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" her reasoning so as to "make a bridge" between the evidence and his conclusions. Fischer v. Barnhart, 129 F. App'x. 297, 303 (7th Cir. 2005) (citing Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004)); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ["ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"] (citations omitted).

That is what the ALJ did in this case, and this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]. This claim is therefore without merit.

## Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the



conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 4, 2014
Charleston, South Carolina

18



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

